UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAHAM JAVAID**,<br><br>         Plaintiff,<br><br>         v.<br><br>**JOHN ARMSTRONG**, in his official capacity as Acting Assistant Secretary of State for Consular Affairs, *et al.*,<br><br>         Defendants. | Case No. 24-cv-2716 (CRC) |

**OPINION**

Maham Javaid, an American citizen, filed a visa petition to allow her Pakistani husband to live with her in the United States.  Following an interview by a U.S. consular officer, Javaid's husband was informed that his visa application was "refused" and then subsequently placed into "administrative processing" for further review.  One year later, the State Department had yet to render a final decision.  So Javaid filed this suit to compel a determination.  She claims the delay breaches the government's duty to adjudicate visa applications within a reasonable amount of time, in violation of the Administrative Procedure Act and the Mandamus Act.  The government moves to dismiss.  Finding that Javaid has failed to identify a discrete action that Defendants must take on her husband's initially refused application as required to state an unreasonable-delay claim, the Court will grant the government's motion and dismiss this case.

I.  **Background**

The Court draws the following background from the allegations in the complaint.

Maham Javaid, an American citizen, married Muhammad Waqas Tahir, a Pakistani citizen, in December 2019.  Compl. ¶¶ 1, 11, 12.  In March 2020, Javaid filed Form I-130,

Petition for Alien Relative, with the U.S. Citizenship and Immigration Services ("USCIS").  Id. ¶ 13.  Form I-130 is a petition filed by U.S. citizens to initiate the immigration application process for eligible foreign relatives.  I-130, Petition for Alien Relative, USCIS, (last updated May 5, 2025), https://www.uscis.gov/i-130.

In June 2021, USCIS approved Javaid's petition and forwarded it to the National Visa Center for consular processing.  Compl. ¶ 14–15.  In September 2023, a consular officer interviewed Tahir at the U.S. Embassy in Islamabad.  Id. ¶ 19.  Following the interview, Tahir received notice that his application had been refused and placed into administrative processing under § 221(g) of the Immigration and Nationality Act ("INA").  Id. ¶ 19.  Tahir and Javaid contend that they have not received adequate updates regarding the status of Tahir's application, despite having submitted all the required documentation.  Id. ¶ 21.  The delay in adjudication has required Javaid to travel to reunite with her husband and has caused her financial distress.  Id. ¶ 22.

Accordingly, in September 2024, approximately one year after the visa application was refused, Javaid sued Assistant Secretary of State for Consular Affairs Rena E. Bitter, Deputy Assistant Secretary for Visa Services Julie M. Stufft, and Deputy Chief of Mission for the U.S. Embassy in Islamabad, Pakistan, Andrew Schofer ("Defendants") in their official capacities.[1]  Id. ¶¶ 2–4, 50–53.  The complaint asserts that the Administrative Procedure Act ("APA") (5 U.S.C. § 555(b)), the Foreign Affairs Manual ("FAM") (9 FAM 504.1-3(g), 403.10-2(A))[2], and the Immigration Services and Infrastructure Improvements Act of 2000 (8 U.S.C. § 1571) require

---

[1] Per Federal Rule of Civil Procedure 25(d), the successor to each of these listed public officials has automatically been substituted as a defendant.

[2] Javaid references the Foreign Affairs Manual in her opposition brief, but not the complaint.  Nonetheless, the FAM does not create a duty to act.  Infra Section III.A.

2

Defendants to adjudicate Tahir's application in a timely fashion. See Compl. ¶ 40; Opp'n at 3. And it seeks an order compelling such action under § 706 of the APA and the Mandamus Act (28 U.S.C. § 1361 and § 1651). Compl. ¶¶ 27–47. Javaid also contends that Defendants have violated her Fifth Amendment right to due process. Id. ¶ 48–51. Defendants move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss at 1.

## II. Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Giliana v. Blinken, 596 F. Supp. 3d 13, 17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint, nor accept the plaintiff's legal conclusions as true. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). And, under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

### III. Analysis

#### A. Discrete Action Requirement

The government advances two arguments in support of its motion to dismiss: (1) it has no discrete duty to further adjudicate Tahir's visa after refusing it and placing it into administrative processing and (2) the consular nonreviewability doctrine bars judicial review of the delay. The Court need only reach the first.

The government asserts that there is no discrete agency action required of a consular officer after refusing and placing a visa application into administrative processing. Mot. Dismiss at 4. "The standards for reviewing agency inaction—including visa processing delays—are the same under the APA and Mandamus Act," so the Court will address both claims together. Akrayi v. U.S. Dep't of State, No. 22-cv-1289 (CRC), 2023 WL 2424600 (D.D.C. Mar. 9, 2023). "To state a claim for unreasonable delay, [a plaintiff] must first allege that the agency 'failed to take a discrete agency action that it is required to take[.]'" Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (internal citations omitted).

To support its argument, the government cites to the D.C. Circuit's unpublished opinion in Karimova v. Abate, No. 23-cv-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), in which the D.C. Circuit affirmed the district court's dismissal of a visa delay claim on the ground that the plaintiff had failed to show a legal duty that the defendants were required to perform. Id. at *3. The Circuit reasoned that, under applicable State Department regulations, once the visa application was refused and placed into administrative processing, Karimova's "matter" was "conclude[d.]" Id. at *4. The government thus had no clear, non-discretionary duty under the APA to further adjudicate a visa application once it was refused by a consular officer. Id. at *3.

4

The facts of this case mirror those in Karimova, so a straightforward application of that case would defeat Javaid's claim that APA § 555(b) imposes a further duty to act on a refused application in administrative processing. As in another recent case before this Court, however, the government contends that the unpublished decision in Karimova is binding. Reply at 3.

Consistent with its ruling in Doroodchi v. Rubio, No. 23-cv-3170 (CRC), 2025 WL 1865114 (D.D.C. July 7, 2025), the Court rejects the government's contention that Karimova is binding. See D.C. Cir. R. 36(e)(2). The Court will nevertheless follow Karimova because "the opinion represents the considered and unanimous judgment of a D.C. Circuit panel" on the issue at hand. Doroodchi, 2025 WL 1865114 at *4. The Court will do so despite the considerable tension that exists between the Circuit's interpretation of the regulations and how the visa-review process plays out in real life. See id.; see also Ibrahim v. Spera, No. 23-cv-2085 (ABJ), 2024 WL 4103702, at *3 n.2 (D.D.C. Sept. 6, 2024). In practice, applicants like Tahir whose visas are placed in administrative processing are told that the agency will "continue processing" the applications once any requested documentation has been received yet have no remedy for delays during this further "processing" stage. Ibrahim, 2024 WL 4103702, at *3 n.2.

Having concluded that APA § 555(b) creates no non-discretionary duty to act on Javaid's application, the Court now turns to whether Javaid has identified a non-discretionary duty to act on her application in another statute or regulation. Javaid locates additional nondiscretionary duties in two places: the Immigration Services and Infrastructure Improvements Act (8 U.S.C. § 1571) and the Foreign Affairs Manual (9 FAM 504.1-3, 403.10-2(A)). But neither of these sources establish a non-discretionary duty that can serve as the basis for Javaid's claim.

Consider first 8 U.S.C. § 1571—which expresses "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days

5

after the initial filing of the application." Javaid contends that Defendants have failed to comply with this statutory deadline for reviewing Tahir's visa application. Not so. As Defendants note, § 1571 applied to the Immigration and Naturalization Service, whose functions were turned over to USCIS in 2002. See 8 U.S.C. §1551 Statutory Note 2. USCIS does not adjudicate visa applications. For certain visa categories, applicants are required to file a petition with USCIS—for example, to establish a qualifying relationship between an applicant and their U.S. relative. After USCIS approves the petition, the applicant then submits the visa application to the Department of State. Javaid does not claim that USCIS has neglected its duty to process Tahir's petition; the petition was, in fact, approved. Compl. ¶ 14. And 8 U.S.C. § 1571 does not assign any additional duties to the consular officer reviewing the visa application.

Javaid also locates a non-discretionary duty in 9 FAM 504.1-3(g), which states that "[an officer] cannot temporarily refuse, suspend, or hold the visa for future action," and 9 FAM 403.10-2(A)(a)—which states that a "quasi-refusal . . . may not be used as the sole grounds for a refusal." Section 504.1-3 is inapplicable, however, because the FAM explicitly lists INA § 221(g) as a legitimate ground for refusal. See 9 FAM 504.11-2(A), (C). Karimova also clarifies that a § 221(g) refusal is "final." 2024 WL 3517852, at *6; accord Ibrahim, 2024 WL 4103702, at *3. And a "quasi-refusal" under FAM 403.10-2(A) refers to circumstances absent here, when an applicant has not yet filed a formal application. Accord FAM 504.11-3(B)(1). Javaid's invocation of additional statutes and regulations therefore does not differentiate this case from Karimova.

Finally, Javaid asserts that Defendants violated her Fifth Amendment right to due process by "depriv[ing] the Plaintiff of her life with [her husband] in the United States." Compl. ¶ 50. The Fifth Amendment "forbids the government to infringe certain 'fundamental' liberty

interests[.]" Reno v. Flores, 507 U.S. 292, 302 (1993) (citations omitted). But Javaid offers no cases applying the Fifth Amendment in this manner. To the contrary, both the Supreme Court and the D.C. Circuit have held that U.S. citizens do not have a fundamental right to live in the United States with a noncitizen spouse. Dep't of State v. Muñoz, 602 U.S. 899, 909 (2024); Colindres v. U.S. Dep't of State, 71 F.4th 1018, 1023 (D.C. Cir. 2023). In other words, noncitizens do not have the right "to live in the United States with [their] spouse." Khan v. Bitter, No. 23-cv-1576 (BAH), 2024 WL 756643, at *7 (D.D.C. Feb. 23, 2024) (citing Colindres, 71 F.4th at 1023). Javaid's due process claim therefore misses the mark.

Because Javaid has not identified a discrete agency action that the government is required to take, she has failed to state a claim upon which relief can be granted. Accordingly, the Court will dismiss Javaid's complaint.

B.  Amendment

Javaid alternatively asks the Court for leave to amend her complaint. Opp'n at 8–9. Leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, courts may deny leave to amend a complaint when amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (listing "futility of amendment" as a reason to not afford leave). An amendment is futile when the amended claims "would not survive a motion to dismiss." James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citation omitted). Here, Javaid has not explained how she would amend her complaint so as to remedy any of the legal defects discussed above. Nor has she proposed any specific changes to her complaint or attached a proposed amended filing. See LCvR 15.1 ("A motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended."). Given these lapses, the Court will deny leave to amend as futile.

7

## IV. Conclusion

For these reasons, the Court will dismiss the complaint and the case in a separate order that accompanies this Opinion.

_____  
CHRISTOPHER R. COOPER  
United States District Judge

Date: July 29, 2025